UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JAMIE KEENE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-CV-676-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| WELLPATH CORPORATION, *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on a Motion for Summary Judgment by Defendants Courtney Forgy and Elaine Smith. [R. 52]. Plaintiff Jamie Keene, *pro se*, did not file a response. Instead, Plaintiff filed a Motion to Subpoena Witnesses for an Evidentiary Hearing. [R. 65]. Defendants responded in opposition [R. 66], and Plaintiff did not reply. For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion to Subpoena Witnesses for an Evidentiary Hearing is **DENIED**.

## I. BACKGROUND

Plaintiff Jamie Keene filed this *pro se* 42 U.S.C. § 1983 suit on September 21, 2020. [R. 1; R. 10]. Plaintiff alleges Defendant Wellpath and its employees Courtney Forgy and Elaine Smith were deliberately indifferent to his serious medical needs while he was incarcerated at the Luther Luckett Correctional Complex ("LLCC"). Defendant Courtney Forgy is a registered nurse ("RN") and Defendant Elaine Smith is an advanced practice registered nurse ("APRN").  Plaintiff contends he had to undergo an emergency colostomy on February 24, 2020, due to a "remnant rectosigmoid colon collapse" because of Defendants' failure to timely and properly assess his condition. [R. 1,

p. 5]. Defendant Wellpath moved to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12 [R. 12], which the Court granted [R. 30].

The remaining Defendants now move for summary judgment. [R. 52]. Instead of filing an appropriate response, Plaintiff has once again sought to extend the discovery deadline by filing a Motion to Subpoena Witnesses for an Evidentiary Hearing. [DN 66]. These matters are ripe for review.

## II.  MOTION TO SUBPOENA WITNESSES

Plaintiff's Motion to Subpoena Witnesses for an Evidentiary Hearing requests that this Court hold an evidentiary hearing to allow Plaintiff to present his claims of negligence to the Court. [R. 66, p. 1]. Plaintiff explains he has sent multiple letters in an effort to communicate with the doctor who performed his surgeries, noting that this expert witness would completely solidify Plaintiff's case. *Id.* at 2.

### A.  Procedural History

The Court issued a Service and Scheduling Order on November 10, 2020, setting pretrial discovery and dispositive motion deadlines of March 4, 2021, and May 5, 2021, respectively. [R. 9]. On May 5, 2021, Defendants Forgy and Smith filed a Motion for Summary Judgment [R. 35], and Plaintiff responded on May 24, 2021 [R. 40]. On the same day he filed his response, Plaintiff filed a motion to stay any ruling on the motion for summary judgment until he was afforded additional discovery. [R. 41]. The Court granted the motion, reopened discovery, and set new pretrial discovery and dispositive motion deadlines of June 17, 2022, and July 15, 2022, respectively. [R. 47].

On July 15, 2022, Defendants timely filed this Motion for Summary Judgment. [R. 52]. The Court ordered Plaintiff to respond to the Motion for Summary Judgment within 30 days from

entry of the Order. [R. 56]. On August 11, 2022, the Court granted Plaintiff's first Motion for Extension of time to respond to Defendants' Motion for Summary Judgment. [R. 59]. The Court declined to extend or reopen the discovery deadline. *Id*. On September 29, 2022, Plaintiff filed a second Motion for Extension of time to respond to Defendants' Motion for Summary Judgment and again sought to reopen discovery, specifically to obtain an affidavit from Dr. Khedy who Plaintiff contends performed his colostomy surgery. [R. 60]. The Court denied the motion to reopen discovery, finding that (1) the record did not reflect that Dr. Khedy performed the February 24, 2020, colostomy surgery and (2) over two months had passed since Plaintiff mailed his letter to Dr. Khedy seeking an affidavit. [R. 62]. The Court, however, once again granted Plaintiff's request for an extension of time to respond to the summary judgment motion, setting the response deadline for December 5, 2022. [R. 62].

Instead of properly responding to Defendants' Motion for Summary Judgment, Plaintiff has now filed this Motion to Subpoena Witnesses for an Evidentiary Hearing. [R. 65].

### B.  Discussion

The Court has "broad discretion under the rules of civil procedure to manage the discovery process and control [its] dockets." *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)). This broad discretion applies to reopening discovery. *Kindoll v. S. Health Partners*, No. CV 17-84-DLB, 2019 WL 1461078, at *2 (E.D. Ky. Apr. 2, 2019) (citing *Lowe v. Hamilton Cnty. Job & Family Servs.*, No. 1:05-cv-117-TSB, 2007 WL 1513823 (S.D. Ohio May 22, 2007)). Accordingly, a court may modify a discovery schedule for good cause. Fed. R. Civ. P. 16(b)(4). Courts consider five factors when determining whether to reopen discovery: "(1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery

period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests." *Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011) (citing *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)). The Sixth Circuit has emphasized that "[t]he overarching inquiry in these overlapping factors is whether the moving party was diligent" while discovery was ongoing. *Marie*, 771 F.3d at 366.

Plaintiff fails to demonstrate good cause for reopening discovery. Plaintiff learned of his apparent need for the requested discovery, at the very latest, when Defendants filed their first summary judgment motion on May 5, 2021. *See* [R. 35, pp. 6–7]. At that time, Defendants argued that Plaintiff failed to present verified medical evidence regarding the purported detrimental effect of any delay in receiving care. *Id.* Nevertheless, the Court previously reopened discovery and extended the discovery deadline by an additional four months. *See* [R. 47]. Plaintiff offers no explanation why he failed to make use of the second pretrial discovery period and the guidance the Court provided him about taking discovery during the allotted time. As such, Plaintiff's apparent need for additional discovery was created by his own failure to procure discovery during the allotted time. Further, the present Motion to Subpoena Witnesses for an Evidentiary Hearing was filed *after* the Court denied Plaintiff's two recent attempts to reopen discovery. [R. 59]; [R. 62].

While Plaintiff may be referencing Dr. Khedy as the witness he attempted to contact in September of 2022, Plaintiff fails to point to any evidence that Dr. Khedy performed his October 2020 surgery. Lastly, no evidence exists to suggest that Defendants were not responsive to Plaintiff's discovery requests in the second pretrial discovery period. For these reasons, Plaintiff has not demonstrated good cause for amendment of the scheduling order. *See, e.g.*, *Martinez v. Hiland*, No. 5:13-CV-P182-GNS, 2017 WL 939009, at *3 (W.D. Ky. Mar. 9, 2017); *Chepak v.*

*New York City Health & Hosp. Corp.*, 643 F. App'x 62 (2nd Cir. 2016) (holding district court did not abuse its discretion by denying *pro se* plaintiff's request to subpoena an individual where request was made months after discovery had closed and after a summary judgment motion was fully briefed); *Thomas v. Northern*, No. 1:07-CV-114-CAS, 2008 WL 2397354, *1 (E.D. Mo. June 9, 2008) (denying *pro se* plaintiff's motion to issue a discovery order by subpoena because discovery was closed, the court had already extended the discovery deadline once, and a motion for summary judgment was pending).

For these reasons, the Court finds that Plaintiff was dilatory in his discovery efforts pursuant to Rule 16(b)(4) and denies Plaintiff's Motion to Subpoena Witnesses for an Evidentiary Hearing.

### III.  MOTION FOR SUMMARY JUDGMENT

#### A.  Factual Background

Plaintiff is a convicted prisoner housed at LLCC. On February 19, 2020, Plaintiff submitted a healthcare request complaining of abdominal pain, rectal bleeding, and an inability to use the bathroom.[1] [R. 10, p. 3]; [R. 37, p. 5]. Plaintiff was seen by triaging staff. [R. 37, p. 5]. Defendant RN Forgy ("Forgy") diagnosed Plaintiff with constipation and gave him "Milk of Magnesia." [R. 10, p. 3]; [R. 37, p. 8]. The following day, February 20, 2020, Plaintiff submitted another healthcare request complaining of stomach pain, "bright red" rectal bleeding, and vomiting. [R. 37, p. 6]. Plaintiff was again seen by Forgy, who took his vital signs. *Id.* Defendant APRN Smith ("Smith") also examined Plaintiff and diagnosed him with constipation and hemorrhoids. *Id.* She ordered a steroid shot for pain relief, a phenergan shot, and an IV bag of fluid for dehydration. *Id.* at 9; [R. 10, p. 3].

---

[1] In his Amended Complaint, however, Plaintiff states he told Defendant Forgy he was able to have bowel movements. [R. 10, p. 3].

Plaintiff's medical records do not show that he sought treatment or submitted a healthcare request on Friday, February 21, 2020. However, Plaintiff's verified complaint alleges that the pain was so severe he passed out twice that day. [R. 1, p. 3]. He further states that Smith, without any further examination, diagnosed him with gas and ordered workups for the following Tuesday. *Id.* On Saturday, February 22, 2020, Plaintiff complained of continued stomach pain. [R. 54, p. 5]. LLCC staff recorded his vital signs as stable and his bowel sounds as normal. *Id.* Staff contacted Nurse S. Schoenbachler, who instructed Plaintiff to drink water, monitor diet, to stop Milk of Magnesia, and to keep his follow-up appointment with Smith on February 25, 2020. *Id.*

On Monday, February 24, 2020, Plaintiff reported that he had passed out again. *Id.* at 4. Forgy and Smith examined Plaintiff for emergent pain which he complained had worsened. [R. 10, p. 4]; [R. 54, p. 4]. Smith conducted an abdominal examination and ordered Plaintiff to be transported to an outside hospital. *Id.*; [R. 37, p. 7]. Plaintiff was transported to Norton Healthcare. [R. 38]; [R. 54, p. 8]. While at Norton, Plaintiff underwent an emergent Hartmann procedure for perforated diverticulitis on February 24, 2020. [R. 10, p. 4]; [R. 38, p. 7]. Specifically, Plaintiff underwent a sigmoidectomy surgery and a colostomy. [R. 38,   p. 9].

Plaintiff filed this Eighth Amendment claim for deliberate indifference to a serious medical need, alleging that he suffered from gastro-esophageal reflux disease and Hepatitis C and "when assessed with rectal bleeding demonstrates symptoms of diverticulosis." [R. 1, p. 5]. Plaintiff further avers that "[h]ad the above-named defendants taken proper steps to x-ray Plaintiff, [they] would have found he suffered from diverticulosis/diverticulitis and treated him without having to subject him to undue pain and threat of death." *Id.*

### B. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge its burden by demonstrating the absence of evidence to support an essential element of the nonmoving party's case. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* Ultimately, if the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).

Plaintiff's *pro se* status does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent*

*Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a p*ro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); *see also Carr v. Metro Gov't*, No. 3:19-CV-P449-CHB, 2022 WL 4686993, at *3–4 (W.D. Ky. Sept. 30, 2022).

## C. Analysis

### 1. Plaintiff's Failure to Respond

Plaintiff failed to respond to the motion for summary judgment. "A non-moving party has a burden to file a response and designate the specific facts upon which he relies to establish the existence of a genuine issue for trial." *Adams v. Cunnagin*, No. 19-6221, 2020 WL 6325663 (6th Cir. Sept. 9, 2020) (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992)). In the Sixth Circuit, if the moving party meets its initial burden and the nonmoving party fails to respond, the court will rely on the "facts presented and designated by the moving party." *Guarino*, 980 F.2d at 404; *see also* Fed. R. Civ. P. 56(e). Importantly, "[w]here the nonmoving party fails to respond to the motion for summary judgment, the trial court is under no obligation to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *In re St. Clair Clinic, Inc.*, 73 F.3d 362 (6th Cir. 1996) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989)). However, a court will not "grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991); *see also Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005). Rather, a court must examine the motion for summary judgment to ensure the movant has met his

initial burden. *Carver*, 946 F.2d at 454–55.

### 2. Eighth Amendment Claim

Defendants argue that summary judgment is appropriate because (a) Plaintiff cannot demonstrate the necessary subjective element of an Eighth Amendment deliberate indifference claim, and (b) Plaintiff cannot demonstrate the necessary objective element of this claim because he failed to present expert or verified medical evidence in support of his claims against Defendants. [R. 52, p. 8].

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A claim for denial of adequate medical care has an objective and a subjective component." *Dudley v. Streeval*, No. 20-5291, 2021 WL 1054390, at *3 (6th Cir. Feb. 8, 2021). To satisfy the objective element of a deliberate indifference claim, a plaintiff must allege "a serious medical need, which is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Martin v. Warren Cnty.*, 799 F. App'x 329, 338 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). To satisfy the subjective component of the deliberate indifference test, a plaintiff must allege "that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)) (internal quotation marks omitted).

### a. Subjective Element

Defendants first argue that summary judgment is appropriate because Plaintiff cannot satisfy the subjective component of his Eighth Amendment deliberate indifference claim. [R. 52]. As stated, to satisfy the subjective component of the deliberate indifference test, a plaintiff must allege "that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler*, 893 F.3d at 891 (internal citations omitted). "A defendant has a sufficiently culpable state of mind if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The Sixth Circuit has explained "[t]his means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Winkler*, 893 F.3d at 891 (quoting *Farmer*, 511 U.S. at 837). In other words, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)) (internal quotation marks omitted).

Further, while "[a] plaintiff need not show that the defendant acted with the very purpose of causing harm," he "must show something greater than negligence or malpractice." *Winkler*, 893 F.3d at 891 (citing *Farmer*, 511 U.S. at 835); *see also Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir. 2003) ("Mere negligence or malpractice is insufficient to establish an [Eighth] Amendment violation."). Thus, with respect to deliberate indifference claims against healthcare providers, a claim of mere medical negligence will not satisfy this subjective element. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Moreover, the "subjective component [of a deliberate indifference claim] must be addressed for each officer individually." *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). Accordingly, the Court considers each Defendant in turn.

### i. RN Courtney Forgy

Plaintiff argues that Forgy acted with deliberate indifference to a serious medical need when she knowingly denied him adequate care by refusing to consider his pre-existing conditions of gastro-esophageal reflux disease and Hepatitis C "when assessed with [his] rectal bleeding" to properly assess his condition and take prompt action. [R. 1, p. 5]; [R. 10, p. 5]. Additionally, Plaintiff alleges that had Forgy x-rayed Plaintiff, she would have discovered the diverticulitis. *Id.*

Here, Plaintiff has failed to produce evidence that Forgy was subjectively aware of information from which she could have inferred a substantial risk to Plaintiff's health, and that she acted with reckless disregard to that risk. *See Rouster v. County of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014). In fact, the evidence in this case fails to establish that Forgy perceived Plaintiff's complaints as anything more than constipation and hemorrhoids. [R. 37, p. 8].

The record reflects that Forgy examined Plaintiff on three occasions. Forgy initially assessed Plaintiff on February 19, 2020, the day he submitted his first healthcare request. [R. 10, p. 2]; [R. 37, p. 5]. She recorded Plaintiff's vital signs, documented his symptoms of constipation and rectal bleeding, and noted that his last bowel movement occurred the day before and was normal. [R. 37, pp. 5, 8]; [R. 54, p. 7]. After determining his bowel sounds were also normal, Forgy believed Plaintiff was suffering from constipation and rectal bleeding from suspected hemorrhoids. *Id.* Forgy gave an order for Milk of Magnesium to address his symptoms and instructed him to increase water intake, to walk 20 minutes daily, not to strain during bowel movements, to avoid prolonged standing/lifting, and to increase "bulk" in diet. *Id.*

Forgy assessed Plaintiff again the following day. [R. 37, p. 6]; [R. 54, p. 6].  She recorded his vital signs, documented his symptoms of continued abdominal pain and rectal bleeding, documented his new symptom of vomiting, and referred him to Smith. *Id.* Finally, on February 24, 2020, Plaintiff arrived complaining of emergent pain that had worsened. [R. 37, p. 7]; [R. 52, p. 8]. Forgy performed an assessment, noting that Plaintiff was pale, ill-appearing, with abdomen rounded, distended, and decreased bowel sounds. [R. 52, p. 8]. Forgy notified Smith, who ordered Plaintiff be taken via ambulance to the hospital. *Id.* Essentially, on these last two occasions, Forgy informed her supervisor of Plaintiff's complaints, who then took over Plaintiff's medical care. Accordingly, the Court concludes that no reasonable jury could find that Forgy had a sufficiently culpable state of mind to give rise to a deliberate indifference claim.

Additionally, Plaintiff's claim that Forgy should have ordered an x-ray in light of his pre-existing conditions and his rectal bleeding does not establish deliberate indifference to his medical needs. "A patient's disagreement with his physician [or nurse] over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983." *Cope v. Lou. Metro. Dep't Corr. Med./Mental Health Depts.*, No. 3:15CV-P257-GNS, 2015 WL 5145560, at *3 (W.D. Ky. Sept. 1, 2015). "The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment." *Id.*; *see also Estelle v. Gamble*, 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court."); *Grose v. Corr. Med. Serv., Inc.*, 400 F. App'x. 986, 988 (6th Cir. 2010) (same).

For these reasons, the Court finds that Plaintiff has failed to demonstrate the subjective component of the deliberate indifference test with respect to his claims against Forgy.

### ii. APRN Elaine Smith

Plaintiff also contends Smith exhibited deliberate indifference to his medical needs when she knowingly denied prompt and urgent care "by willfully refusing to rely on [his] pre-diagnosed condition(s) of gastro-esophageal reflux disease and Hepatitis C with the fact that Plaintiff had symptoms of rectal bleeding with pain." [R 10, p. 5]; [R. 1, p. 5]. Plaintiff argues that had Smith x-rayed him, she would have discovered the diverticulitis. [R. 1, p. 5]. Plaintiff further alleges that Smith, "[i]n sending him away resulted in a perforated Hinchey III diverticulitis causing the plaintiff to undergo a colostomy procedure." [R. 10, p. 5].

Based on Plaintiff's own assertions, Plaintiff received medical treatment from Smith. Specifically, the record reflects that on February 20, 2020, Plaintiff submitted a second Healthcare Request complaining of vomiting, continued stomach pain, and rectal bleeding. [R. 37, p. 6]. After staff recorded Plaintiff's vital signs and examined his abdomen, Smith also examined Plaintiff. *Id.* Based on her assessment, Smith ordered IV fluids for dehydration, Phenergan for nausea, and steroids to reduce inflammation. [R. 37, p. 6]; [R. 54, p. 6]. Smith instructed Plaintiff to return if symptoms should persist or worsen. *Id.* On February 24, 2020, Smith once again examined Plaintiff for an emergent pain which he stated had worsened. [R. 37, p. 7]; [R. 54, p. 8]. Upon examination, Plaintiff was pale, ill-appearing, with abdomen rounded, distended, and decreased bowel sounds [R. 54, p. 8]. Smith immediately ordered Plaintiff to be transported to Norton Hospital via ambulance. *Id.*

Plaintiff's complaint is not, then, that Smith failed to render medical care, but that Smith did not properly diagnose him or treat him. As discussed above, the Sixth Circuit has made clear that, in order to show deliberate indifference, a plaintiff must show "more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Johnson v.*

*Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). Negligence, even gross negligence, will not support a § 1983 claim for denial of medical care. *See Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 106; *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

Furthermore, Plaintiff's disagreement with the medical decisions, diagnosis, or treatment made by Smith does not rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *Minion v. Lindsey*, No. 4:19-CV-P95-JHM, 2021 WL 1204143, at *7 (W.D. Ky. Mar. 30, 2021) (same). The Court will not second guess the decisions made by Smith in this case. Smith treated Plaintiff according to her medical judgment based on her reasonably perceived diagnosis.

Plaintiff's assertions that on Friday, February 21, 2020, LLCC officers consulted with Smith about Plaintiff's condition and Smith, without any further examination, diagnosed Plaintiff with gas and ordered "work-ups" does not create a genuine issue of material fact regarding the subjective component of Plaintiff's deliberate indifference claim against Smith. [R. 10, p. 3]. Plaintiff's inmate record does not reflect a written or oral request or complaint regarding his stomach pain, vomiting, or rectal bleeding on that day. [R. 37]; [R. 38]; [R. 54]. Even accepting Plaintiff's allegation as true, Smith's telephonic consultation with LLCC staff and instructions regarding Plaintiff's medical condition one day after she had previously assessed him and ordered treatment does not rise to the level of deliberate indifference. *See Rhinehart v. Scutt*, 509 F. App'x

510, 513–514 (6th Cir. 2013) (holding that inmate "has not alleged more than a difference of opinion with respect to his medical treatment, and as a general rule, where a plaintiff has received care, he will not be able to sustain a claim of deliberate indifference") (citation omitted); *Williams v. Hardin Cnty. Det. Ctr.*, No. 3:16CV-P186-GNS, 2019 WL 1427550, at *9 (W.D. Ky. Mar. 29, 2019).

Lastly, Plaintiff has failed to identify how his preexisting conditions of Hepatitis C and gastroesophageal reflux disease were related to the diverticulitis he suffered. Plaintiff is unable to show that any failure by medical staff to recognize how his preexisting conditions impacted their diagnosis rises to the level of deliberate indifference. For these reasons, the Court finds that Plaintiff has failed to demonstrate the subjective component of the deliberate indifference test with respect to his claims against Smith.

### b. *Objective Element*

Having concluded that Plaintiff failed to establish the subjective element of his Eighth Amendment deliberate indifference claims, the Court declines to address Defendants' remaining arguments.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that a reasonable jury could not find that Defendants were deliberately indifferent to Plaintiff's medical needs, even viewing the facts in the light most favorable to Plaintiff. Accordingly, **IT IS HEREBY ORDERED** as follows:

1.   Plaintiff's Motion to Subpoena Witnesses for an Evidentiary Hearing [**R. 65**] is **DENIED**.

2.   Defendants' Motion for Summary Judgment [**R. 52**] is **GRANTED**.

The Court will enter a separate judgment dismissing the action.

This the 1st day of March, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:    Plaintiff, *pro se*
       counsel of record